Attorneys for Plaintiff

# 16 CV 1808

## SUPERIOR COURT OF THE STATE OF MARYLAND –
## IN AND FOR THE COUNTY OF BALTIMORE

| | |
|---|---|
| PAULETTE WILLIAMS, an individual | ) Case No. 02261, September Term, 2014 |
| | ) |
| Plaintiff, | ) COMPLAINT FOR: |
| vs. | ) 1.   LACK OF STANDING TO |
| | )        FORECLOSE; |
| AMERICAN MORTGAGE NETWORK | ) 2.   FRAUD IN THE CONCEALMENT; |
| INCORPORATED AND FEDERAL | ) 3.   FRAUD IN THE INDUCEMENT; |
| NATIONAL ASSOCIATION; FEDERAL | ) 4.   INTENTIONAL INFLICTION OF |
| NATIONAL MORTGAGE ASSOCIATION | )        EMOTIONAL DISTRESS; |
| AS TRUSTEE FOR SECURITIZED | ) 5.   QUIET TITLE; |
| TRUST FANNIE MAE REMIC TRUST | ) 6.   SLANDER OF TITLE; |
| 1998-12; FANNIE MAE; UNKNOWN; | ) 7.   DECLARATORY RELIEF; |
| KYANITE SERVICES, INC.; | ) 8.   VIOLATIONS OF TILA; |
| MORTGAGE ELECTRONIC | ) 9.   VIOLATIONS OF RESPA; |
| REGISTRATION SYSTEM, AKA | ) 10.  RESCISSION. |
| "MERS" AND DOES 1 THROUGH 100, | ) |
| INCLUSIVE | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

0

COMPLAINT

1

2   SUPERIOR COURT OF THE STATE OF MARYLAND IN AND FOR
3                  THE COUNTY OF BALTIMORE

4
5              MANDATORY JUDICIAL NOTICE

6   PAULETTE WILLIAMS, an individual    )
7                                       )
8              Plaintiff                )
9                                       )   CASE NO.
                                        )   02261, September
10  vs.                                 )   Term, 2014
11                                      )
12  AMERICAN MORTGAGE                   )
13  NETWORK INCORPORATED AND            )
14  FEDERAL NATIONAL ASSOCIATION;       )
15  FEDERAL NATIONAL MORTGAGE           )
16  ASSOCIATION AS TRUSTEE FOR          )
17  SECURITIZED TRUST FANNIE MAE        )
18  REMIC TRUST 1998-12; FANNIE MAE;    )
19  UNKNOWN; KYANITE SERVICES, INC;     )
20  MORTGAGE ELECTRONIC REGISTRATION    )
21  SYSTEM, AKA "MERS" AND DOES 1       )
22  THROUGH 100, INCLUSIVE              )
23                                      )
24             Defendants               )
25                                      )
26                                      )
27                                      )
28

                   Mandatory Judicial Notice

Pg. 01

Pursuant to Federal Rules of Evidence Rule 201(b)(d) hereby request that the Court take judicial notice of the following added as amendments:

1. APPLICATION FOR TEMPORARY RESTRAINING ORDER

   *State Department of Health and Mental Hygiene v. Baltimore County*, 281 Md. 548, 550, 383 A.2d 51, 53 (1977); *Anne Arundel County v. Governor*, 45 Md. App. 435, 455, 413 A.2d 281, 290 (1980)." *Amoco Oil Co. v. Luehrs*, 55 Md. App. 656, 659-60 (1983).

2. PRELIMINARY INJUNCTION

   *State Department of Health and Mental Hygiene v. Baltimore County*, 281 Md. 548, 550, 383 A.2d 51, 53 (1977); *Anne Arundel County v. Governor*, 45 Md. App. 435, 455, 413 A.2d 281, 290 (1980)." *Amoco Oil Co. v. Luehrs*, 55 Md. App. 656, 659-60 (1983).

3. DECLARATORY RELIEF

   *Eastside Vend Distributors, Inc. v. Pepsi Bottling Group, Inc.*, 396 Md. 219, 240 (2006). Injunctive relief is awardable when it is necessary to preserve the status quo. *Amoco Oil Co. v. Luehrs*, 55 Md. App. 656, 659-60 (1983).

4. NOTICE OF PENDENCY OF ACTION

   A Notice of Lis Pendens certified and authenticated with Maryland Secretary of State was received and filed September 8, 2014 with clerk of circuit court of Baltimore County.

5. LACK OF STANDING TO FORECLOSE

   Federal Rules of Civil Procedures 12 (b) (6) states that failure to state a claim under which relief can be granted. A Rule 12 (b) (6) motion tests the sufficiency of a complaint and does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Presley v. City of Charlottesville 464 F.3d 480, 483 (4th Cir. 2006). A Rule 12(b) (6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

6. FRAUD IN THE CONCEALMENT

   Jeffrey P. Downer and Christine A. Slattery won a defense jury verdict in *Kloster v. Roberts* for fraud, fraudulent concealment, and negligent misrepresentation.

Mandatory Judicial Notice

## 7. FRAUD IN THE INDUCEMENT

This isn't the first time this has come up in Maryland: Last year 2010, two other law firms in the state, **Bierman Geesing & Ward** and Covahey Boozer Devan and Dore, admitted that they had forged signatures on foreclosure documents in a similar manner. And Baltimore firm Friedman & MacFayden is being investigated for similar allegations, the *Sun* reports. At this rate, the title issues in Maryland could prove to be as tragic in scope as those in Florida. **Bierman Geesing & Ward represent the servicer Seterus known as Kyanite Services Inc.** Article: Foreclosure Fraud in Maryland: Banks' Lawyers Accused of Forging 1000+Deeds written March 9, 2011 by Abagail Field

## 8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff has experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

## 9. QUIET TITLE

Maryland Real Property Code 14-108 authorizes quiet title actions to remove clouds on title. Pampell Interests, Inc. v. Wolle, 797 S.W. 2d 392 (1990)'; Texas Howard Bierman committed fraudulent conveyance of property 32 Running Brook Drive, Baltimore, Maryland 21244 by removing the owner's name Mary Etta Williams (deceased mother of owner) represented by Paulette Williams who transferred over to Fola Will I Am El and transferring to 14221 Dallas Parkway, Suite 1000, Dallas, Texas 75254. It was transferred to an address and not an individual according to State of Maryland Land Instrument Intake Sheet on October 23, 2014

## 10. SLANDER OF TITLE

Case law of Tarrant Bank v. Miller, 833 S. W. 2d 666 (1992); Texas

## 11. VIOLATIONS OF TILA

Violation of TILA and HOEPA, 15 U.S.C. § 1601, E.T. SEQ.

## 12. VIOLATIONS OF RESPA

Violation of RESPA, 1 U.S.C. § 2601 E.T. SEQ.

## 13. RESCISSION

Affidavit of Rescission of Contract was filed May 13, 2013 with National Republic Registry. The Truth In Lending Act, 15 U.S.C. § 1601, et. seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loan terms or Borrower's right to rescind.

Mandatory Judicial Notice

1  Federal Rules of Evidence, Rule 201 provides for
2  judicial notice of various matters, including "official
3  acts" of governmental departments, as well as "facts
4  and propositions that are not reasonably subject to
5  dispute and are capable of immediate and accurate
6  determination by resort to sources of reasonably
7  indisputable accuracy."

8

9  An Affidavit of Fact Mandatory Judicial Notice and
10 Evidence being certified and authenticated by Maryland
11 Secretary of State was received and filed August 13,
12 2014 with clerk of circuit court of Baltimore County.

13

14 In compliance with FRCP Rule 12 (b) (6) the Plaintiff
15 is stating a claim under which relief can be granted.
16 The Plaintiff is seeking equitable relief for each
17 cause of action to be awarded:

18

19 1. Compensatory, special, general and punitive
20    damages, restitution allowed by law. Attorney fees
21    and costs of this action. Declaratory relief for
22    Plaintiff is prevailing party, Mortgage Originator
23    has no enforceable secured or unsecured claim
24    against the party. Plaintiff is entitled to the
25    exclusive possession of the property owning it in
26    fee simple and entitled to the quiet and peaceful
27    possession of the property 32 Running Brook Drive,
28    Windsor Mill, Maryland 21244. All Defendants and

Mandatory Judicial Notice

Pg. 04

Performance of your duties

persons claiming to be under them have no estate, right, title, lien, or interest in or to the real property or any part of the property. The Trustees of the Trusts have no enforceable secured or unsecured claim against the property.  The Sponsor has no enforceable secured or unsecured claim against the Property.

The compensation for the above is $2,000,000.00 in total.  Please honor Obligation of Good Faith in Performance of your duties with good clean hands.

Accordingly, Plaintiff respectfully requests that the Court take judicial notice of the above-referenced documents.

Dated: 11/6/15                    By: _Paulette Williams_

                                       Paulette Williams
                                       Plaintiff

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF MARYLAND –
## IN AND FOR THE COUNTY OF BALTIMORE

| | | |
|---|---|---|
| PAULETTE WILLIAMS, an individual | ) | Case No. 02261, September Term, 2014 |
| | ) | |
| **Plaintiff,** | ) | **COMPLAINT FOR:** |
| vs. | ) | 1.   LACK OF STANDING TO |
| | ) |     FORECLOSE; |
| AMERICAN MORTGAGE NETWORK | ) | 2.   FRAUD IN THE CONCEALMENT; |
| INCORPORATED AND FEDERAL | ) | 3.   FRAUD IN THE INDUCEMENT; |
| NATIONAL ASSOCIATION; FEDERAL | ) | 4.   INTENTIONAL INFLICTION OF |
| NATIONAL MORTGAGE ASSOCIATION | ) |     EMOTIONAL DISTRESS; |
| AS TRUSTEE FOR SECURITIZED | ) | 5.   QUIET TITLE; |
| TRUST FANNIE MAE REMIC TRUST | ) | 6.   SLANDER OF TITLE; |
| 1998-12; FANNIE MAE; UNKNOWN; | ) | 7.   DECLARATORY RELIEF; |
| KYANITE SERVICES, INC.; | ) | 8.   VIOLATIONS OF TILA; |
| MORTGAGE ELECTRONIC | ) | 9.   VIOLATIONS OF RESPA; |
| REGISTRATION SYSTEM, AKA | ) | 10.  RESCISSION. |
| "MERS" AND DOES 1 THROUGH 100, | ) | |
| INCLUSIVE | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW the Plaintiff, PAULETTE WILLIAMS ("Plaintiff"), complaining of the Defendants as named above, and each of them, as follows:

## I. THE PARTIES

1.  Plaintiff is now, and at all times relevant to this action, a resident of the County of BALTIMORE, State of MARYLAND.

2.  Defendant, AMERICAN MORTGAGE NETWORK INCORPORATED and FEDERAL NATIONAL ASSOCIATION (herein referred to as "AMERICAN MORTGAGE and FNMA") is a National Banking Association, doing business in the County of BALTIMORE, State of MARYLAND. Plaintiff is further informed and believes, and thereon alleges that AMERICAN MORTGAGE and FNMA is the Originator of the loan.

3.  Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (herein referred to as "FANNIE MAE"), as Trustee for securitized trust FANNIE MAE REMIC TRUST 1998-12 (herein referred to as "TRUST 1998-12"). Plaintiff is informed and believes, and thereon alleges that, Defendant FANNIE MAE, is a national banking association, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

4.  Defendant, FANNIE MAE. Plaintiff is informed and believes, and thereon alleges that, Defendant FANNIE MAE, is a corporation, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

5.  Defendant, UNKNOWN. Plaintiff is informed and believes, and thereon alleges that, Defendant UNKNOWN, is a corporation, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Depositor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

6.  Defendant, KYANITE SERVICES, INC. Plaintiff is informed and believes, and thereon alleges that, Defendant KYANITE SERVICES, INC., is a corporation, doing business in the

County of BALTIMORE, State of MARYLAND and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

7. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of MARYLAND, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of BALTIMORE, State of MARYLAND. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

8. At all times relevant to this action, Plaintiff has owned the Property located at 32 RUNNING BROOK DRIVE BALTIMORE, MARYLAND 21244 (the "Property").

9. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

10. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## II. JURISDICTION

11. The transactions and events which are the subject matter of this Complaint all occurred within the County of BALTIMORE, State of MARYLAND.

12. The Property is located within the County of BALTIMORE, State of MARYLAND with an address of 32 RUNNING BROOK DRIVE BALTIMORE, MARYLAND 21244.

### III. INTRODUCTORY ALLEGATIONS

13. This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

14. Plaintiff, homeowner, disputes the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Mortgage/Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Mortgage/Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in Plaintiff's Home which is described in detail herein. For these reasons, the Court should Quiet Title to the property in Plaintiff's name.

15. Additionally, Plaintiff homeowner brings causes of action against all defendants for fraud, intentional infliction of emotional distress, rescission, declaratory relief based, and violations of T.I.L.A., R.E.S.P.A., and H.O.E.P.A, upon the facts and circumstances surrounding Plaintiff's original loan transaction and subsequent securitization. Defendants' violations of these laws are additional reasons this Court should quiet title in Plaintiff's property in Plaintiff and award damages, rescission, declaratory judgment, and injunctive relief as requested below.

16. From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

17. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired

"bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

18. A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment or Transfer made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee or transferee of record.

19. Each REMIC Trust created by the investment banks, usually under New York Law, would be funded with thousands to tens-of-thousands of mortgage notes. In order to maintain their bankruptcy-protected status, REMIC's had to have closing dates by which every mortgage note and/or security device like a Mortgage of Mortgage/Deed of Trust was to be sold to the REMIC and had to be "owned" by the REMIC. Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

20. How a particular mortgage loan ended up being transferred to a REMIC in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions.

21. When the Plaintiff in this case closed on his/her property, her original lender (or other entity claiming original or near original ownership of the note) signed a PSA that governed plaintiff's particular mortgage note. The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and described exactly how the homeowner's note is to find its way from the original lender to the REMIC trust.

22. A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee. Here is a chart detailing the typical key party assignment chain required by a typical PSA:

4

COMPLAINT



23. As part of the process, the banks almost universally separated the promissory note from the Mortgage/Deed of Trust. Under the common law, the owner of the note has the right to payments on the note, and the owner of the Mortgage/Deed of Trust has the right to foreclose on the homeowner if the homeowner defaults on the note. Traditionally, before investment banks began securitizing mortgage notes, the holder of the note would universally hold the Mortgage/Deed of Trust. This made sense because the party with the right to collect payments on the note would want to be able to foreclose using the Mortgage/Deed of Trust if the homeowner defaulted.

24. However, to streamline the securitization process, the investment banks created an entity called Mortgage Electronic Registrations System ("MERS"), who is one of the defendants in this case. The investment banks, in addition to using MERS' electronic database to track the buying, selling, and assignments of securitized mortgage notes (bypassing the county clerks' offices), would transfer deeds of trust to MERS, thereby separating the mortgage note from the Mortgage/Deed of Trust. MERS would hold the Mortgage/Deed of Trust for whoever later claimed to be the "owner" of the homeowners' mortgage note.

25. Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Mortgage/Deed of Trust, resulting in imperfect security interests and claims.

26. Plaintiff further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or indorsement of the Promissory Note and/or proper assignment of the Mortgage/Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly

5
**COMPLAINT**

acquired.

27. Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Mortgage/Deed of Trust.

28. Plaintiff also seeks redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

    a. An invalid and unperfected security interest in Plaintiff's Home hereinafter described;

    b. Void "True Sale(s)" violating MARYLAND law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Plaintiff's mortgage;

    c. An incomplete and ineffectual perfection of a security interest in Plaintiff's Home;

## IV. SPECIFIC ALLEGATIONS

29. On or about FEBRUARY 27, 1998 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with AMERICAN MORTGAGE and FNMA by obtaining a $185,600.00 mortgage loan secured by Plaintiff's principal residence, (Subject Property). This note was secured by a First Mortgage/Trust Deed on the Property in favor of AMERICAN MORTGAGE and FNMA.

30. Plaintiff's loan was securitized, with the Note not being properly transferred to Defendant, FANNIE MAE, acting as the Trustee for the TRUST 1998-12 Trust holding plaintiff's note. Documents filed with the SEC by the securitization participants allegedly claim that the note and Mortgage/Deed of Trust at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages with an aggregate principal balance of approximately $1,011,754,977 into the TRUST 1998-12 Trust, which is a Common Law Trust formed pursuant to New York law. A detailed description of the mortgage loans which

form the TRUST 1998-12 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and which can be accessed through the above mentioned footnote.

31. An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's mortgage note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for:



32. The Plaintiff's PSA requires that his/her note or Mortgage/Deed of Trust had to be indorsed and assigned, or transferred, respectively, to the trust and executed by multiple intervening parties in the above chain of assignment before it reached the REMIC Trustee.

33. Plaintiff executed a series of documents, including but not limited to a Note and Mortgage/Deed of Trust, securing the Property in the amount of note. The original beneficiary and nominee under the Mortgage/Deed of Trust was MERS.

34. Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Mortgage/Deed of Trust executed by Plaintiff in favour of the original lender and other Defendants, regarding the Property, was not properly assigned and/or transferred to Defendants operating the pooled mortgage funds or REMIC trusts in accordance with the PSA and/or MARYLAND law to the entities making and receiving the purported assignments to this trust.

35. Plaintiff alleges that the PSA requires that each Note or Mortgage/Deed of Trust had to be indorsed, assigned, or transferred, respectively, to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note and/or the Mortgage/Deed of Trust, or both, was assigned to the Securitized Trust by the closing date. Therefore, under the PSA, any assignments of the Mortgage/Deed of Trust beyond the specified closing date for the Trust are void.

COMPLAINT

36. Plaintiff further alleges that even if the Mortage/Mortgage/Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

37. Plaintiff is informed and believes, and thereon alleges, that the TRUST 1998-12 Trust had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities as described in the Prospectus identified herein below. A detailed description of the mortgage loans which form the TRUST 1998-12 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and which can be accessed through the below mentioned footnote.[1]

38. Plaintiff also alleges that the Note was secured by the Mortgage/Deed of Trust. Plaintiff alleges that as of the date of the filing of this Complaint, the Mortgage/Deed of Trust had not been legally assigned to any other party or entity.

39. Plaintiff is informed and believes, that Defendant FANNIE MAE, alleges that it is the "holder and owner" of the Note and the beneficiary of the Mortgage/Deed of Trust. However, the Note and Mortgage/Deed of Trust identify the mortgagee and note holder as the original lending institution or Mortgage Originator. Documents state that the original lender allegedly sold the mortgage loan to TRUST 1998-12 Trust.

40. Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for TRUST 1998-12 Trust, the Note was duly indorsed, transferred and delivered to TRUST 1998-12 Trust, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Mortgage/Deed of Trust was duly assigned, transferred and delivered to TRUST 1998-12 Trust, via the trustee FANNIE MAE, including all intervening transfers/assignments.

41. Plaintiff further alleges that any documents that purport to transfer any interest in the Note to TRUST 1998-12 Trust after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

42. Plaintiff's debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest

---

[1] http://www.sec.gov/Archives/edgar/data/815018/000116231807000567/m0565424b5.htm

in the Property was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Mortgage/Deed of Trust. The alleged beneficiary of Plaintiff's Mortgage/Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest, or agent or nominee of the real aprt in interest, with regard to any action taken or to be taken against the Property.

43. Plaintiff is also informed and believes, and thereon allegess that at all times herein mentioned, and any assignment of a Mortgage/Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

44. In order for and defendant, including the trusteeof the Securitized Trust, to have a valid and enforceable secured claim against Plaintiff's Home, the party claiming the right to foreclose must prove and certify to all parties that, among other things required under the PSA:

   a. There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

   b. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case, through their agents or otherwise.

45. Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified in the PSA.

46. Plaintiff is further informed and believes, and thereon alleges, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a "bona fide" or a "True Sale." Since, as alleged herein below, True Sales did not actually occur, Plaintiff alleges that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

47. Plaintiff is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Mortgage/Deed of Trust on Plaintiff's Home herein.

48. Plaintiff is informed and believes, and thereon alleges, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiff further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to TRUST 1998-12 Trust, which Mortgage Files include the original Deeds of Trust, herein.

49. Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage/Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

    a. The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage/Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage/Deed of Trust;

    b. When the loan was sold to each intervening entity, there were no Assignments of the Mortgage/Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

    c. The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage/Deed of Trust to FANNIE MAE , in accordance with the PSA of the Defendants, as Securitization Participants;

d.  The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Defendant FANNIE MAE, as Trustee for TRUST 1998-12 Trust, in accordance with the PSA and applicable New York law and/or the Uniform Commercial Code;

e.  No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under MARYLAND law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f.  Defendants, and each of them, violated the pertinent terms of the PSA.

50. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate

51. Furthermore, the terms of the finance transaction with AMERICAN MORTGAGE and FNMA are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and is in essence creates a fraudulent and unenforceable loan. Further, this loan was underwritten without proper due diligence by AMERICAN MORTGAGE and FNMA as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. AMERICAN MORTGAGE and FNMA also used a "GDW Cost of Savings" as the Index for the basis of this loan. Because the Lender controls this Index and it is directly based upon the average rate of interest AMERICAN MORTGAGE and FNMA parent company, it was not a valid index for the basis of the loan.

52. In addition, and unbeknownst to Plaintiff, AMERICAN MORTGAGE and FNMA illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which AMERICAN MORTGAGE and FNMA knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit

11

**COMPLAINT**

scores and the borrower's Stated Income only. Had AMERICAN MORTGAGE and FNMA used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, AMERICAN MORTGAGE and FNMA sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. AMERICAN MORTGAGE and FNMA ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

53. There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

54. Additionally, Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

55. The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' combined actions as alleged herein.

## V. FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL FORECLOSURE

### A.    No Defendant has Standing to Foreclose

56. Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

57. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Property, or cannot prove to the court they have a valid interest as a real party in interest to foreclose. Thus,

the purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each of them, no longer applies.

58. Plaintiff is informed and believes and there upon allege that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks or other entities holding the note in the middle of the chain of transfers were paid in full.

59. Plaintiff further contends that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements (contained in the PSA) and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

60. Plaintiff requests that this Court find that the purported power of sale contained in the Note and Mortgage/Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Property remain in its name, with said Mortgage/Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

**B.**     **Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage**

61. Since the creation of Plaintiff's Note herein and Mortgage/Deed of Trust, Defendant MERS was named the "beneficiary" of the Mortgage/Deed of Trust.

62. Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities.

63. Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

**COMPLAINT**

64. Plaintiff is informed and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

65. The Note in this action identifies the entity to whom it was payable, the original lender. Therefore, the Note herein cannot be transferred unless it is indorsed; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that the original lender indorsed and sold the note to another party.

66. Furthermore, insofar as the parties to the securitization of Plaintiff's Note and Mortgage/Deed of Trust base their claim that the Note was transferred or assigned to Defendant FANNIE MAE, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Mortgage/Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

67. Pursuant to state law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specifically identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is indorsed.

68. Defendants, and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore, Defendant MERS could only transfer whatever interest it had in the Mortgage/Deed of Trust herein. The Promissory Note and Mortgage/Deed of Trust are inseparable: an assignment of the Note carries the mortgage (ie, Mortgage/Deed of Trust) with it, while an assignment of the Mortgage/Deed of Trust alone is a nullity.[2] Therefore, if one party receives the Note and another party receives the Mortgage/Deed of Trust (as in this case), the holder of the Note prevails regardless of the order in which the interests were transferred.

69. Defendants MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS

---

[2] *Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952); *Hyde v. Mangan*, 88 Cal. 319, 327, 26 P. 180 (1891); *Polhemus v. Trainer*, 30 Cal. 685, 688, 1866 WL 831 (1866). *See Johnson v. Razey*, 181 Cal. 342, 344, 184 P. 657 (1919).

**COMPLAINT**

lacked authority as mere nominee to assign Plaintiff's mortgage, making any assignment from MERS defective.

70. In the instant action, MERS, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MERS to the foreclosing trustee.

71. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under law. Therefore, Defendant, MERS, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

72. Defendants, and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that real property is unique.

73. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the Property.

74. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## VI. <u>SECOND CAUSE OF ACTION:</u>
## <u>FRAUD IN THE CONCEALMENT</u>

75. Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

76. Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By

concealing the securitization, Defendant concealed the fact that Borrower's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendant but not disclosed.

77. Defendant knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans.

78. Defendant intended to induce Plaintiff based on these misrepresentations and improper disclosures.

79. Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff's home.

80. Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

81. Defendants were aware of the misrepresentations and profited from them.

82. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

83. Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## VII. <u>THIRD CAUSE OF ACTION:</u>
## <u>FRAUD IN THE INDUCEMENT</u>

84. Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

85. Defendants, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

86. Defendants misrepresented that they are the "holder and owner" of the Note and the beneficiary of the Mortgage/Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the original lender allegedly sold the mortgage loan to TRUST 1998-12 Trust. Defendants were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Property which they have no monetary or pecuniary interest. This type of conduct is outrageous.

87. Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

88. The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property. This material misrepresentation was made with the purpose of initiating the securitization process as illustrated above, in order to profit from the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors on Wall Street and other New York investment banks.

89. Defendants were aware of the misrepresentations and profited from them.

90. As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

91. Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## VIII. FOURTH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

COMPLAINT

92. Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

93. The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

94. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

95. Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

96. Defendants' conduct – fraudulently attempting to foreclose or claimng the right to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

97. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

98. At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

99. As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim of the right to foreclose on Plaintiff's home, the Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

100.      Plaintiff did not default in the manner stated in the Notice of Default, yet because Defendants' outrageous conduct, Plaintiff have been living under the constant emotional nightmare of losing the Property.

101.    As a proximate cause of Defendants' conduct, Plaintiff has experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

102.    The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

## IX. FIFTH CAUSE OF ACTION:
## SLANDER OF TITLE

103.    Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

104.    Plaintiff incorporates here each and every allegation set forth above. Defendants, and each of them, disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidencing the commencment of judicial foreclosure by a party who does not possess that right.

105.    Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

106.    As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

107.    As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the

property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

108.    As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

109.    At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

110.    The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## X. SIXTH CAUSE OF ACTION:
## QUIET TITLE

111.    Plaintiff's title to the above-described property is derived as follows: On or about FEBRUARY 27, 1998 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with AMERICAN MORTGAGE and FNMA by obtaining a $185,600.00 mortgage loan secured by Plaintiff's principal residence, (Subject Property). This note was secured by a First Trust Deed on the Property in favor of AMERICAN MORTGAGE and FNMA.

112.    All Defendants named herein claim an interest and estate in the property adverse to plaintiff in that defendant asserts he is the owner of the note secured by the Mortgage/Deed of Trust to the property the subject of this suit.

113.    All Defendants named herein claims an interest and estate in the property adverse to plaintiff in that defendant asserts he is the owner of Mortgage/Deed of Trust securing the note to the property the subject of this suit.

114.    The claim of all defendant are without any right whatsoever, and defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

**COMPLAINT**

115.     The claim of all defendant herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to plaintiff's title, and these claims constitute a cloud on plaintiff's title to the property.

116.     Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

117.     Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property; and

118.     Plaintiff request the court award plaintiff costs of this action, and such other relief as the court may deem proper.

## XI. SEVENTH CAUSE OF ACTION:
## DECLARATORY RELIEF

119.     Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

120.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding the Note and Mortgage/Trust Deed.

121.     Plaintiff contends that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

122.     Plaintiff is informed and believes and upon that basis alleges that Defendants dispute Plaintiff's contention and instead contend they may properly foreclose upon the Property.

123.     Plaintiff therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

124.	Plaintiff requests a determination of the validity of the Mortgage/Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

125.	Plaintiff requests a determination of the validity of the NOD (Notice Of Default).

126.	Plaintiff requests a determination of whether any Defendant has authority to foreclose on the Property.

127.	Plaintiff requests all adverse claims to the real property be must determined by a decree of this court.

128.	Plaintiff requests the decree declare and adjudge that plaintiff is entitled to the exclusive possession of the property.

129.	Plaintiff requests the decree declare and adjudge that plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

130.	Plaintiff requests the decree declare and adjudge that defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## XII. EIGHTH CAUSE OF ACTION:
## VIOLATION OF TILA AND HOEPA, 15 U.S.C. § 1601, ET. SEQ.

131.	Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

132.	Plaintiff alleges that the loan that is the subject matter of this complaint was and is a consumer-credit transaction within the meaning of TILA and HOEPA.

133.	Defendants violated TILA/HOEPA by failing to provide Plaintiff with accurate material disclosures required under TILA/HOEPA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

134.     Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

135.     As a further direct and proximate result of defendants' conduct, Plaintiff lost substantial equity in their home, in that they were unable to refinance when their home had a higher appraisal value.

136.     As a direct and proximate result of defendants' conduct, Plaintiff were unable to refinance their home or to obtain any modification of their loan, which has resulted in Plaintiff being permanently burdened by the fraudulent loan made by defendants.

137.     An actual controversy now exists between Plaintiff, who contends she has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

138.     As a direct and proximate result of Defendants' violations Plaintiff have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

139.     Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

140.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

## XIII. NINTH CAUSE OF ACTION:

## VIOLATION OF RESPA, 1 U.S.C. § 2601 ET. SEQ.

141.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

142.     The loan to Plaintiff was a federally regulated mortgage loan as defined in RESPA.

143.     Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

**COMPLAINT**

a) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

b) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

144.   In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is disproportionate to the situation Plaintiff find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer financially as a result of the loan product sold to Plaintiff.

145.   No separate fee agreements, regarding the use of AMERICAN MORTGAGE and FNMA Cost of Savings" as the Index for the basis of this loan, Disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided.

146.   Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving.

147.   As a proximate result of Defendants' actions, Plaintiff has been damages in an amount not yet ascertained, to be proven at trial.

## XIV. <u>TENTH CAUSE OF ACTION:</u>
## <u>RESCISSION</u>

148.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

149.   Plaintiff is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; 4) Fraudulent Inducement; ; 5) failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note and Mortgage/Deed of Trust; and 5) Public Policy Grounds, each of which provides independent grounds for relief.

**COMPLAINT**

150.    The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

151.    The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

152.    As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, will ask for the following for each Cause of Action to be awarded:

### FIRST CAUSE OF ACTION - STANDING

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law;

6.  For Attorney's Fees and Costs of this action;

7.  For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.  Plaintiff, Plaintiff is the prevailing party;

    b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

**COMPLAINT**

   d.  The Depositor has no enforceable secured or unsecured claim against the Property;

   e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f.  Determines all adverse claims to the real property in this proceeding;

   g.  Plaintiff is entitled to the exclusive possession of the property;

   h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

**SECOND CAUSE OF ACTION – FRAUD IN THE CONCEALMENT**

1. For Compensatory Damages in an amount to be determined by proof at trial;
2. For Special Damages in an amount to be determined by proof at trial;
3. For General Damages in an amount to be determined by proof at trial;
4. For Punitive Damages as allowed by law;
5. For Restitution as allowed by law;

**THIRD CAUSE OF ACTION – FRAUD IN THE INDUCEMENT**

1. For Compensatory Damages in an amount to be determined by proof at trial;
2. For Special Damages in an amount to be determined by proof at trial;
3. For General Damages in an amount to be determined by proof at trial;
4. For Punitive Damages as allowed by law;
5. For Restitution as allowed by law;

**FOURTH CAUSE OF ACTION – I.I.E.D.**

1. For Compensatory Damages in an amount to be determined by proof at trial;
2. For Special Damages in an amount to be determined by proof at trial;
3. For General Damages in an amount to be determined by proof at trial;
4. For Punitive Damages as allowed by law;
5. For Restitution as allowed by law;

**FIFTH CAUSE OF ACTION – SLANDER OF TITLE**

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Plaintiff, Plaintiff is the prevailing party;

    b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c. The Sponsor has no enforceable secured or unsecured claim against the Property;

    d. The Depositor has no enforceable secured or unsecured claim against the Property;

    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

    f. Determines all adverse claims to the real property in this proceeding;

    g. Plaintiff is entitled to the exclusive possession of the property;

    h. Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

    i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## SIXTH CAUSE OF ACTION – QUIET TITLE

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

**COMPLAINT**

7.  For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.  Plaintiff, Plaintiff is the prevailing party;

    b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

    d.  The Depositor has no enforceable secured or unsecured claim against the Property;

    e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

    f.  Determines all adverse claims to the real property in this proceeding;

    g.  Plaintiff is entitled to the exclusive possession of the property;

    h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

    i.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## SEVENTH CAUSE OF ACTION – DECLARATORY RELIEF

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law;

6.  For Attorney's Fees and Costs of this action;

7.  For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.  Plaintiff, Plaintiff is the prevailing party;

    b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

    d.  The Depositor has no enforceable secured or unsecured claim against the Property;

    e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

    f.  Determines all adverse claims to the real property in this proceeding;

    g.  Plaintiff is entitled to the exclusive possession of the property;

    h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

    i.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## EIGHTH CAUSE OF ACTION – VIOLATION OF T.I.L.A.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.  Plaintiff, Plaintiff is the prevailing party;

    b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

    d.  The Depositor has no enforceable secured or unsecured claim against the Property;

    e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

**COMPLAINT**

    f.   Determines all adverse claims to the real property in this proceeding;

    g.  Plaintiff is entitled to the exclusive possession of the property;

    h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

    i.   Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## NINTH CAUSE OF ACTION – VIOLATION OF R.E.S.P.A.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.  Plaintiff, Plaintiff is the prevailing party;

    b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

    d.  The Depositor has no enforceable secured or unsecured claim against the Property;

    e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

    f.   Determines all adverse claims to the real property in this proceeding;

    g.  Plaintiff is entitled to the exclusive possession of the property;

    h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

**COMPLAINT**

i.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## TENTH CAUSE OF ACTION - RESCISSION

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law;

6.  For Attorney's Fees and Costs of this action;

7.  For Declaratory Relief, including but not limited to the following Decrees of this Court that:

   a.  Plaintiff, Plaintiff is the prevailing party;

   b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

   c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

   d.  The Depositor has no enforceable secured or unsecured claim against the Property;

   e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f.  Determines all adverse claims to the real property in this proceeding;

   g.  Plaintiff is entitled to the exclusive possession of the property;

   h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

**COMPLAINT**

Dated: 11/6/15

LAW OFFICES OF,

*Paulette Williams*

Attorneys for Plaintiff/Plaintiff

*Paulette Williams*

**COMPLAINT**

*Attorney*

# SUPERIOR COURT OF THE STATE OF MARYLAND –
# IN AND FOR THE COUNTY OF BALTIMORE

| | | |
|---|---|---|
| **PAULETTE** WILLIAMS, **an individual** | § | |
| | § | **Case No.** |
| | § | **02261, September Term, 2014** |
| **vs.** | § | |
| | § | |
| **AMERICAN MORTGAGE** | § | **NOTICE OF PENDENCY OF ACTION** |
| **NETWORK INCORPORATED AND** | § | |
| **FEDERAL NATIONAL** | § | |
| **ASSOCIATION; FEDERAL** | § | |
| NATIONAL MORTGAGE | § | |
| ASSOCIATION **AS TRUSTEE FOR** | § | |
| **SECURITIZED TRUST FANNIE** | § | |
| MAE REMIC TRUST 1998-12; | § | |
| **FANNIE** MAE; **UNKNOWN;** | § | |
| **KYANITE** SERVICES, INC.; | § | |
| **MORTGAGE ELECTRONIC** | § | |
| **REGISTRATION SYSTEM, AKA** | | |
| **"MERS" AND DOES 1 THROUGH** | | |
| **100, INCLUSIVE** | | |

0

## LIS PENDENS

PLEASE TAKE NOTICE that this action was commenced in the above named court by the above entitled Plaintiff against the above entitled Defendants, and is now pending.

The Plaintiff alleges a real property claim affecting real property located at 32 RUNNING BROOK DRIVE BALTIMORE, MARYLAND 21244.

The land referred to herein is situated in the County of BALTIMORE, State of Maryland and bears the legal description as follows:

1. [legal description]Assessor/Parcel No.: Baltimore County/2000008046

   Commonly Known As: 32 Running Brook Drive, Baltimore, Maryland 21244

   Baltimore, Maryland 21244 Maryland in Plat Book. EHK, Jr. No. 54, folio 100  Being a portion of those same lots of ground which by Deed dated June 23, 1986, and recorded among the Land Records of Baltimore County, Maryland at Liber 7704, folio 509.

Dated:


Respectfully Submitted,                 LAW OFFICES,




                                        *Paulette Williams*
                                        Plaintiff or Attorney for Plaintiff

## <u>VERIFICATION</u>

I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Maryland that the foregoing is true and correct.

Date of execution:    11 - 4 - 2015

_Fiola M. William El_
PLAINTIFF

_[signature]_    11-4-15
NOTARY

[SEAL]

TARA PATEL
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
My Commission Expires August 21, 2016

2

NOTICE OF PENDENCY OF ACTION

*Attorney     Info.*

## SUPERIOR COURT OF THE STATE OF MARYLAND –
## IN AND FOR THE COUNTY OF BALTIMORE

| | |
|---|---|
| PAULETTE WILLIAMS, **an individual** | § PART: _____ |
| | § |
| | § Case No. 02261, September Term, 2014 |
| **vs.** | § |
| | § |
| **AMERICAN MORTGAGE** | § **APPLICATION FOR TEMPORARY** |
| **NETWORK INCORPORATED AND** | § **RESTRAINING ORDER,** |
| **FEDERAL NATIONAL** | § **PRELIMINARY INJUNCTION, AND** |
| **ASSOCIATION; FEDERAL** | § **DECLARATORY RELIEF** |
| NATIONAL MORTGAGE | § |
| ASSOCIATION AS TRUSTEE FOR | § |
| SECURITIZED TRUST FANNIE | § |
| MAE REMIC TRUST 1998-12; | § |
| **FANNIE MAE; UNKNOWN;** | § |
| KYANITE SERVICES, INC.; | § |
| **MORTGAGE ELECTRONIC** | § |
| REGISTRATION SYSTEM, AKA | |
| "MERS" AND DOES 1 THROUGH | |
| 100, INCLUSIVE | |

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
DECLARATORY RELIEF

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

COMES NOW, Plaintiff PAULETTE WILLIAMS ("Plaintiff") and files *Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction,* **and Declaratory Relief** against the listed Defendants. A temporary restraining order is appropriate to maintain the status quo. Plaintiff's home will be sold within the next week and Plaintiff are subject to eviction actions, without immediate intervention from this Court.

### A. PARTIES

Plaintiff is now, and at all times relevant to this action, a resident of the County of BALTIMORE, State of MARYLAND.

At all times relevant to this action, Plaintiff has owned the Property located at 32 RUNNING BROOK DRIVE BALTIMORE, MARYLAND 21244 (the "Property").

Defendant, AMERICAN MORTGAGE NETWORK INCORPORATED and FEDERAL NATIONAL ASSOCIATION (herein referred to as "AMERICAN MORTGAGE and FNMA") is a National Banking Association, doing business in the County of BALTIMORE, State of MARYLAND. Plaintiff is further informed and believes, and thereon alleges, that AMERICAN MORTGAGE and FNMA is the Originator of the loan.

Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (herein referred to as "FANNIE MAE"), as Trustee for securitized trust FANNIE MAE REMIC TRUST 1998-12 (herein referred to as "TRUST 1998-12"). Plaintiff is informed and believes, and thereon alleges that, Defendant FANNIE MAE, is a national banking association, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, FANNIE MAE. Plaintiff is informed and believes, and thereon alleges that, Defendant FANNIE MAE, is a corporation, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, UNKNOWN. Plaintiff is informed and believes, and thereon alleges that, Defendant UNKNOWN, is a corporation, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, KYANITE SERVICES, INC. Plaintiff is informed and believes, and thereon alleges that, Defendant KYANITE SERVICES, INC., is a corporation, doing business in the County of BALTIMORE, State of MARYLAND and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of New York, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of BALTIMORE, State of MARYLAND. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

below, were acting within the course and scope of such agency, employment and/or joint venture.

## B. INTRODUCTION

On FEBRUARY 27, 1998, plaintiff executed and delivered to defendant AMERICAN MORTGAGE and FNMA a promissory note payable to Originator in the amount of $185,600.00.

On FEBRUARY 27, 1998, as security to defendant AMERICAN MORTGAGE and FNMA for payment of the note, plaintiff executed a Mortgage/Deed of Trust/mortgage conveying to MERS as trustee for the Originator as beneficiary/mortgagee, that real property located at 32 RUNNING BROOK DRIVE BALTIMORE, MARYLAND 21244, which is more specifically described as [legal description of real property]. The Mortgage/Deed of Trust/mortgage was recorded as document number #26622.1 in the official records of BALTIMORE County, Maryland. This Mortgage/Deed of Trust/mortgage is referred to in this complaint as "the Mortgage/Deed of Trust/mortgage," and the property described in the Mortgage/Deed of Trust/mortgage is referred to as "the property." A copy of the Mortgage/Deed of Trust/mortgage is attached, marked Exhibit _____, and incorporated by reference.

Defendant AMERICAN MORTGAGE and FNMA did NOT cause to be recorded a notice of default in the official records of BALTIMORE County, Maryland, alleging that a breach of the obligation secured by the Mortgage/Deed of Trust/mortgage has occurred as required by law.

Defendants, and each of them, intend to sell the property, having given notice that sale of the property. Unless restrained, defendants, and each of them, will thus sell the property or cause the property to be sold. This sale would be to plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that plaintiff, having no right to redeem the property from the sale, will forfeit the property if the sale takes place as scheduled.

## C. FACTUAL ALLEGATIONS

For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only,

3

negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing their home to the very entity and entities who placed them in this position.

On or about FEBRUARY 27, 1998 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with AMERICAN MORTGAGE and FNMA by obtaining a $185,600.00 mortgage loan secured by Plaintiff's principal residence, 32 RUNNING BROOK DRIVE BALTIMORE, MARYLAND 21244. This note was secured by a Deed on the Property in favor of AMERICAN MORTGAGE and FNMA.

The terms of the finance transaction with AMERICAN MORTGAGE and FNMA are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by AMERICAN MORTGAGE and FNMA as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. AMERICAN MORTGAGE and FNMA also used a

"GDW Cost of Savings" as the Index for the basis of this loan, because the Lender controls this Index and it is directly based upon the average rate of interest AMERICAN MORTGAGE and FNMA parent company.

In addition, and unbeknownst to Plaintiff, AMERICAN MORTGAGE and FNMA illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which AMERICAN MORTGAGE and FNMA knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had AMERICAN MORTGAGE and FNMA used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, AMERICAN MORTGAGE and FNMA sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. AMERICAN MORTGAGE and FNMA ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

How a particular mortgage loan ended up being transferred to a REMIC TRUST in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the

5

United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Plaintiff's PSA required at minimum this chain of title:



A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee of record.

In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

    a.  There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

    b.  The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein,

they are estopped and precluded from asserting any secured or unsecured claim in this case.

Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified in the PSA.

Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage/Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

   a. The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage/Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage/Deed of Trust;

   b. When the loan was sold to each intervening entity, there were no Assignments of the Mortgage/Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c. The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage/Deed of Trust to FANNIE MAE, in accordance with the PSA of the Defendants, as Securitization Participants;

   d. The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Defendant FANNIE MAE, as Trustee for TRUST 1998-12 Trust, in accordance with the PSA;

   e. No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under MARYLAND law,

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f.  Defendants, and each of them, violated the pertinent terms of the PSA.

## D. THE STANDARD FOR INJUNCTIVE RELIEF IS SATISFIED

1. FORECLOSURE TRO'S:

Injunctive or declaratory relief is be available to prevent an improper private sale of encumbered property as a preventative and protective remedy, *aimed at future acts,* but it is not intended to redress past wrongs. *Eastside Vend Distributors, Inc. v. Pepsi Bottling Group, Inc.,* 396 Md. 219, 240 (2006). Injunctive relief is awardable when it is necessary to preserve the status quo. *Amoco Oil Co. v. Luehrs,* 55 Md. App. 656, 659-60 (1983).

2. PRELIMINARY INJUNCTION:

"The proper exercise of the discretion in granting or denying injunctive relief requires consideration of four factors: 1) likelihood of success on the merits; 2) the 'balance of convenience'; 3) irreparable injury, which can include the necessity to maintain the status quo; and 4) where appropriate, the public interest. The party seeking the issuance of the writ bears the burden of justifying the granting of the preliminary injunction. *State Department of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 550, 383 A.2d 51, 53 (1977); *Anne Arundel County v. Governor,* 45 Md.App. 435, 455, 413 A.2d 281, 290 (1980)." *Amoco Oil Co. v. Luehrs,* 55 Md. App. 656, 659-60 (1983).

3. TEMPORARY RESTRAINING ORDER:

"The proper exercise of the discretion in granting or denying injunctive relief requires consideration of four factors: 1) likelihood of success on the merits; 2) the 'balance of convenience'; 3) irreparable injury, which can include the necessity to maintain the status quo; and 4) where appropriate, the public interest. The party seeking the issuance of the writ bears the burden of justifying the granting of the preliminary injunction. *State Department of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 550, 383 A.2d 51, 53 (1977); *Anne Arundel County v. Governor,* 45 Md.App. 435, 455, 413 A.2d 281, 290 (1980)." *Amoco Oil Co. v. Luehrs,* 55 Md. App. 656, 659-60 (1983).

"A temporary restraining order may be granted only if it clearly appears from specific facts shown by affidavit or other statement under oath that immediate, substantial, and irreparable harm will result to the person seeking the order before a full adversary hearing can be held on the propriety of a preliminary or final injunction." Md. Code, Rule 15-504.

## E. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS AT TRIAL.

The foreclosure sale and/or any further transfer of ownership or encumbrance must be enjoined because the evidence elicited demonstrates that Plaintiff will succeed on the merits at trial. Plaintiff has successfully alleged nine causes of action against Defendants in this case, including violations of TILA and RESPA; Fraud; Unfair and Deceptive Business Practice; Unconscionability; and Quiet Title.

An actual controversy has arisen and now exists between plaintiff and defendants regarding their respective rights and duties. Plaintiff contends that his note and deed of trust where not transferred and/or assigned pursuant to Plaintiff's loan's PSA and/or Maryland Law, that defendants violated Federal TILA and RESPA laws, as well as committed fraud in the indicement and concealment at the initiation of the loan. A judicial declaration is necessary and appropriate at this time under all the circumstances so that plaintiff may determine his or her rights and duties under the note and *deed of trust*, specifically,

At the very basis of Plaintiff's Complaint, based upon the facts outlined herein and above, Plaintiff has alleged and can demonstrate at trial that Defendants breached their PSA contract and through misrepresentation are about to foreclose on Plaintiff's real property, and that because of the securitization process Defendants and their predecessors in interest failed to properly assign Plaintiff's Mortgage note and Deed of Trust according to state law and the PSA governing the original loan.

## PRAYER

WHEREFORE, plaintiff requests judgment as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, defendants' agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, either under the power of sale in the Mortgage/Deed of Trust/mortgage or by foreclosure action;

2. A declaration by the court that sale of the property to enforce the Mortgage/Deed of Trust/mortgage is improper in that plaintiff has raised a claim that the defendant's do not legally hold the note or Mortgage/Deed of Trust and/or do not have right to foreclose on the subject property;

3. Costs of suit; and

4. Any further relief that the court may deem just and equitable.


Dated _____


*[Signature]*

Attorney for Plaintiff

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

## VERIFICATION

I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Maryland that the foregoing is true and correct.

Date of execution: _____11-6-2015_____

_Paulette Williams_
PLAINTIFF

_____11-6-2015_____
NOTARY

[SEAL]

TARA PATEL
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
My Commission Expires August 21, 2016

11

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF